**Elmer D. BAKER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

No. 17A04–0905–CR–299.

Court of Appeals of Indiana.

March 11, 2010.

Latriealle Wheat, Angola, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Elmer D. Baker appeals his two class A felony child molesting convictions and one class C felony child molesting conviction. We affirm.

### Issues

We reorder and restate the issues as follows:

I. Did the trial court violate Baker's constitutional protection against ex post facto laws by granting the State's motion to amend the charging information?

II. Did the trial court commit fundamental error by giving certain jury instructions?

III. Did the trial court abuse its discretion in denying Baker's motion to correct error on the issue of unanimity of jury verdict?

IV. Was Baker denied his constitutional right to effective assistance of counsel?

### Facts and Procedural History

From October 2000 to August 2003, Baker had sexual intercourse and oral sex with his granddaughter, C.B., born September 1, 1990. The encounters took place at his trailer and in his truck. C.B. testified that Baker had sex with her more than fifty times. Tr. at 425. During that same timeframe, C.B. was a witness in a child molesting case against Loren "Buzz" Wilkins, a friend of Baker who lived with him for awhile. Also during this timeframe, Baker had sexual intercourse and oral sex with another granddaughter, J.A., born December 1, 1990. Again, the encounters occurred at his trailer and in his truck. J.A. testified that there were more than 100 sexual encounters between her and Baker. *Id.* at 618. In 2002, Baker fondled and had oral sex with J.A.'s cousin, A.H., born May 13, 1991.

On July 3, 2006, the State charged Baker with two counts of class A felony child molesting and a habitual offender count.

Count I alleged that Baker molested C.B. in June or July 2003, and count II alleged that he molested J.A. during the same timeframe. On June 5, 2007, a four-day jury trial ensued. When the jury was unable to reach a unanimous verdict, the trial court declared a mistrial.

On June 18, 2007, the State filed a motion to amend the charging information. The first two counts remained the same except that the relevant time period was expanded to October 2000 to August 2003. The amended information included count III, class C felony child molesting, alleging that Baker fondled A.H. in 2002. On July 9, 2007, Baker filed a written objection to the State's motion to amend. Following a July 31, 2007, hearing, the trial court granted the State's motion to amend.

On August 18, 2008, a five-day jury trial commenced. Thereafter, the jury found Baker guilty as charged on the three counts of child molesting. Baker waived his right to trial by jury on the habitual offender count, and the trial court found him to be a habitual offender and sentenced him to a 106–year term.

On February 27, 2009, Baker filed a motion to correct error, alleging that the trial court erred in granting the State's motion to amend the charges and in entering judgments in the absence of evidence of unanimity of jury verdict. On April 29, 2009, the trial court denied his motion. This appeal ensued. Additional facts will be provided as necessary.

### Discussion and Decision

### I. *Amendment of Charging Information*

■ Baker contends that the trial court violated his constitutional protection against ex post facto laws by allowing the State to amend the charging information. Both the United States and Indiana Constitutions prohibit the passage of ex post

facto laws. U.S. Const., art. 1 § 10; Ind. Const., art. 1, § 24. The ex post facto clauses prohibit Congress and the States from enacting any law that "imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Wallace v. State,* 905 N.E.2d 371, 377 (Ind.2009) (citation and quotation marks omitted). The underlying purpose of the prohibition is to provide persons with fair warning of the conduct that will give rise to criminal penalties. *Id.* The prohibition applies to substantive and not procedural laws. *Ritchie v. State,* 809 N.E.2d 258, 264 (Ind.2004), *cert. denied* (2005). A change is considered procedural when it does not alter the elements of the crime, enlarge punishment, or deprive the defendant of an available defense. *Id.*

■ Here, when the first trial ended in a hung jury and the trial court declared a mistrial, the State filed a motion to amend the charging information pursuant to Indiana Code Section 35–34–1–5. At the outset, we note that this statute was revised between the latest time at which Baker was alleged to have committed the offenses (2003) and the time of the second trial (2008). In 2003, the relevant language in Indiana Code Section 35–34–1–5(b) stated: "The indictment or information may be amended in matters of substance or form by the prosecutor, upon giving notice to the defendant and with the consent of the court, at anytime up to thirty (30) days before the omnibus date." The revised statute, effective May 8, 2007, states in pertinent part:

(b) The indictment or information may be amended in matters of substance and the names of material witnesses may be added, by the prosecuting attorney, upon giving written notice to the defendant at anytime:

(1) up to:

 (A) thirty (30) days if the defendant is charged with a felony; or

 (B) fifteen (15) days if the defendant is charged only with one (1) or more misdemeanors;

before the omnibus date; or

 (2) *before the commencement of trial;*

if the amendment does not prejudice the substantial rights of the defendant.

*Id.* (emphasis added).

Here, the omnibus date was December 18, 2006. Thus, under the former version of the statute, as interpreted by our supreme court in *Fajardo v. State,* 859 N.E.2d 1201 (Ind.2007), *superseded by statute,* the State's June 18, 2007 motion to amend the information would have been deemed untimely.[1] However, just four months after the *Fajardo* decision, the Indiana General Assembly amended the statute, superseding *Fajardo* and specifically allowing the State to substantively amend the charge at any time up until the date of trial as long as the defendant's substantial rights are not prejudiced thereby. In *Ramon v. State,* 888 N.E.2d 244 (Ind.Ct.App.2008), we addressed the question whether, in the wake of *Fajardo* and the ensuing action by the General Assembly, the provisions of Indiana Code Section 35–34–1–5 are procedural or substantive for purposes of the ex post facto provisions of both the United States and Indiana Constitutions. We concluded that the provisions are procedural rather than substantive, reasoning that the revised statute "defines the procedures the State must follow to amend a charging information. The revised statute creates no new crimes, does not change the elements of any crime, and does not alter the sentencing statutes." 888 N.E.2d at 252. Thus, we held

that retroactive application of the revised statute did not violate the defendant's protection against ex post facto laws. *Id.*

In *Hurst v. State,* 890 N.E.2d 88, 95 (Ind.Ct.App.2008), *trans. denied,* we relied on *Ramon* and held that the statute could be applied retroactively. The State initially charged Hurst with class B felony rape, class D felony residential entry, class A misdemeanor domestic battery, and class A misdemeanor interference with reporting a crime. Fifteen months after the October 7, 2005 omnibus date, the State filed amendments on January 12 and 25, 2007, eventually charging Hurst with class A felony rape, class B felony burglary, class C felony battery, class D felony theft, and class A misdemeanor interference with reporting a crime. On April 12, 2007, Hurst filed a motion to dismiss the amended charges for failure to meet the time limit set out in the earlier version of the statute. The trial court denied his motion, and the jury trial ensued on July 30, 2007. We held that the six months between the date of the amendments and the date of trial constituted a reasonable opportunity for Hurst to prepare for and defend against the amended charge and thus found no prejudice. *Id.* at 95. We decline Baker's invitation to disagree with *Hurst* and *Ramon* and, in accordance with those decisions, apply Indiana Code Section 35–34–1–5 retroactively.

 Here, the amended information retained the two class A felony counts involving Baker's acts committed against C.B. and J.A., but the dates of the alleged acts were expanded from "June and July of 2003" to "October 2000 through August of 2003." Appellant's Amended App. at 11,

---

1. In *Fajardo,* our supreme court vacated the defendant's conviction, noting that, despite a line of cases permitting untimely substantive amendments where the defendant's substan-

tial rights were not prejudiced, adherence to the deadline of thirty days before the omnibus date was required. 859 N.E.2d at 1206–08.

13, 76, 78. With respect to these amendments, we note that time is not of the essence in child molesting cases. *Baber v. State*, 870 N.E.2d 486, 492 (Ind.Ct.App. 2007), *trans. denied.* "It is difficult for children to remember specific dates, particularly when the incident is not immediately reported as is often the situation in child molesting cases." *Id.* (citation and quotation marks omitted). Exact dates become important only in circumstances "where the victim's age at the time of the offense falls at or near the dividing line between classes of felonies." *Id.* (citation and quotation marks omitted). Such is not the case here.

 The amended information also added a count of class C felony child molesting, alleging that Baker fondled A.H. "in or about 2002." Appellant's Amended App. at 80. Even though this amendment concerns a matter of substance rather than an immaterial defect, we conclude that it did not prejudice Baker's substantial rights. " 'A defendant's substantial rights include a right to sufficient notice and an opportunity to be heard regarding the charge.' " *Hurst,* 890 N.E.2d at 95 (quoting *Ramon,* 888 N.E.2d at 252). This means that the defendant must be afforded a reasonable opportunity to prepare for and defend against the amended charge. *Id.* The trial court granted the State's motion to amend the charges against Baker on July 31, 2007. The trial began on August 18, 2008. Thus, Baker was afforded more than twelve months to prepare for and defend against the amended charges. As such, it cannot be said that he lacked

sufficient notice and an opportunity to be heard regarding the amended charges.[2] We also note that during the intervening twelve months, he did not file a motion to dismiss. Accordingly, the trial court did not violate his constitutional protection against ex post facto laws in granting the State's motion to amend the charging information.

### *II. Jury Instructions*

 Baker also challenges the propriety of certain jury instructions. The decision to give a jury instruction is generally a matter within the trial court's discretion, and we therefore review such a decision for an abuse of discretion. *Blanchard v. State,* 802 N.E.2d 14, 32 (Ind.Ct.App. 2004). On appeal, we consider (1) whether the instruction correctly states the law; (2) whether the evidence in the record supports the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Rogers v. State,* 897 N.E.2d 955, 962 (Ind.Ct.App.2008), *trans. denied* (2009). We consider jury instructions not in isolation, but as a whole, with reference to each other. *Williams v. State,* 891 N.E.2d 621, 630 (Ind.Ct.App. 2008). Failure to make a contemporaneous objection to a jury instruction results in waiver. *Blanchard,* 802 N.E.2d at 32.

 Baker admits that he did not object to the jury instructions at the time they were given. To avoid waiver, Baker now alleges that fundamental error occurred. Fundamental error is an ex-

---

**2.** We acknowledge that Indiana Code Section 35–41–4–4(a) prohibits subsequent prosecutions for offenses that should have been charged in a former prosecution. However, we find that the offense charged in count III is distinct both in time and in victim (A.H.) and could have been filed under a separate cause number. *See Richardson v. State,* 800 N.E.2d 639, 645 (Ind.Ct.App.2003) (holding that State is not required to join offenses of robbery and forgery where offenses were sufficiently separated by time and involved different banks), *trans. denied* (2004). We also note that Baker did not challenge the amendment on this basis.

tremely narrow exception to the contemporaneous objection rule and occurs where a substantial, blatant violation of basic due process principles renders the trial unfair to the defendant. *Id.* To qualify as fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Id.* (citation omitted). When the alleged fundamental error concerns a jury instruction, "the error must be such that the whole charge of which it formed a part misled the jury concerning the law of the case." *Id.*

■ Here, Baker challenges two identical instructions, preliminary instruction number 6 and final instruction number 5, which state,

The crime of Child Molesting as charged in Counts I and II is defined by law as follows:

A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct, commits Child Molesting, a Class B Felony.

The offense is a Class A Felony if:

It is committed by a person at least twenty-one (21) years of age.

Before you may convict the Defendant, the State must prove each of the following beyond a reasonable doubt:

1. The Defendant:
2. knowingly
 (a) performed or submitted to
 (b) sexual intercourse or deviate sexual conduct
 (c) with *C.B. or J.A.*
3. when *C.B. or J.A.* was a child under fourteen (14) years of age.
4. when the Defendant was at least twenty-one years of age.

If the State failed to prove each of those elements beyond a reasonable doubt, you should find the Defendant not guilty of Child Molesting, a Class A Felony.

Appellant's Amended App. at 241, 262 (emphases added).

■ Essentially, Baker argues that the jury could have based its verdicts on both counts I and II upon a finding that he molested just one of the two girls. We disagree. The instructions as a whole make it clear that count I applies to acts committed against C.B. and count II applies to acts committed against J.A. *See id.* at 238–40, 259–61, 283–85 (instructing jury by separate instruction for each count, stating different victim's name in each count, and instructing jury on verdict forms for each separate count). Also, the trial court twice instructed the jury that "[y]ou are to consider all of these instructions as a whole and are to regard each with the others given to you. Do not single out any certain sentence or any individual point or instruction and ignore the others." *Id.* at 237, 258. We presume that the jury follows the instructions it is given. *Tormoehlen v. State*, 848 N.E.2d 326, 332 (Ind.Ct.App.2006), *trans. denied.* Thus, Baker has failed to establish any error, let alone fundamental error.

### III. Unanimity of Verdict

■ Baker also contends that the trial court erred in denying his motion to correct error on the issue of unanimity of jury verdict. The decision to grant or deny a motion to correct error lies within the trial court's discretion. *James v. State*, 872 N.E.2d 669, 671 (Ind.Ct.App. 2007). As such, we review the trial court's decision for an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *Id.*

The trial court instructed the jury as follows regarding unanimity of verdict:

> Your verdicts must represent the considered judgment of each juror. In order to return a verdict of guilt or innocence you must all agree.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so without violation of individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Appellant's Amended App. at 286.

At the outset, we note that at trial, Baker did not object to the instruction, the verdict forms, or the verdicts. Immediately after the verdicts were read and the jurors were polled, the trial court asked, "Do the parties know of any reason why judgment should not be rendered on these verdicts at this time?" and defense counsel responded, "No, Your Honor." *Id.* at 1056. The failure to object at trial results in waiver of the issue on appeal. *Bruno v. State,* 774 N.E.2d 880, 883 (Ind.2002). Thus, Baker has waived review of the issue of unanimity of verdict. *Id.; see also Scuro v. State,* 849 N.E.2d 682, 687 (Ind.Ct. App.2006) (stating defendant waived unanimity of verdict argument by failing to object at trial to either verdict forms or verdict), *trans. denied.*

Waiver notwithstanding, in *Taylor v. State,* 840 N.E.2d 324 (Ind.2006), our supreme court held that in order to return a unanimous verdict, "[t]he jury need not unanimously agree on the precise factual details of how [an offense] occurred in order to convict." *Id.* at 334 (citation and quotation marks omitted). Instead, "the jury must agree unanimously that each element of the charged crime has been proved." *Id.* (citation and quotation marks omitted).

Baker relies on *Lainhart v. State,* 916 N.E.2d 924 (Ind.Ct.App.2009), to support his argument that some jurors may have relied on different evidence than other jurors to convict him of the three separate counts of child molesting. In *Lainhart,* the defendant Marlow was charged with one count of intimidation. The charging information stated that he communicated a threat to "[R.S.], [J.B.] *and/or* [A.R.]." *Id.* at 930 (emphasis added). At trial, the State argued alternate theories of Marlow's guilt—that he was guilty based on his own threats against the girls or that he was guilty based on aiding and inducing threats made by his father. *Id.* at 931. The unanimity instruction in that case stated that "to return a verdict, each of you must agree to it." *Id.* In reversing Marlow's intimidation conviction, we focused on both the form of the charge and the State's argument at trial: "The State alleged multiple victims in the disjunctive and argued that Marlow either threatened the girls himself or aided and induced [his father's] threats.... But by arguing alternative victims ... the State actually charged Marlow with several alternative crimes." *Id.* at 941–42. Thus, we concluded that "the jury may have disagreed as to which crime occurred—not just the means by which a single offense was perpetrated ... [and] the trial court should have instructed jurors that they had to reach a unanimous verdict as to which crime, if any, Marlow committed." *Id.* at 942.

Here, unlike in *Lainhart,* the State did not, in a single count, charge alternate

offenses against multiple victims. Instead, the amended charging information contained three separate counts—each addressing Baker's separate acts against a specific victim. Appellant's Amended App. at 76, 78, 80. Moreover, the trial court did not merely give a general instruction that "you must all agree"; rather, it gave the jury separate instructions addressing the separate charges involving the separate victims. *Id.* at 283–85.[3] When the jury returned the verdicts on counts I, II, and III, the trial court polled each juror, asking if this was his/her verdict, and each replied in the affirmative. Tr. at 1055–56.

Finally, we are mindful of the unique nature of the offense of child molesting, and we reiterate that it is often difficult for young victims of this crime to remember times, dates, and even some details separating various incidents that have taken place over a period of time. The jury was not required to reach unanimity as to every factual detail of the molestations; rather, it had to "agree unanimously that each element of the charged crime(s) ha[d] been proved," and it did. *Taylor*, 840 N.E.2d at 334 (citation and quotation marks omitted).

### IV. Ineffective Assistance of Counsel

Finally, Baker asserts that he was denied his constitutional right to effective assistance of counsel. A defendant must satisfy two components to prevail on an ineffective assistance claim. *Smith v. State*, 822 N.E.2d 193, 202–03 (Ind.Ct.App. 2005), *trans. denied.* He must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance is "representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *Brown v. State*, 880 N.E.2d 1226, 1230 (Ind.Ct. App.2008), *trans. denied.* We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind.Ct.App.2006), *trans. denied.* "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind.2007). Prejudice occurs when a reasonable probability exists that, "but for counsel's errors the result of the proceeding would have been different." *Brown*, 880 N.E.2d at 1230. We can dispose of claims upon failure of either component. *Id.*

■ "Counsel is afforded considerable discretion in choosing strategy and tactics,

---

**3.** To the extent Baker relies on *Scuro* as support for his unanimity of verdict challenge, we note that the nature of the crime at issue there, dissemination of pornography to minors, raised a unique question regarding what constitutes a single act and how that translates into the number of counts that can be charged where multiple victims exist. 849 N.E.2d at 687. In *Scuro*, the State charged the defendant with three counts of dissemination, one pertaining to each of the three minor viewers. The *Scuro* court reversed two of the defendant's three dissemination convictions based on its interpretation that the dissemination statute focuses on the act of *displaying* the pornography rather than on the

number of minors who *viewed* it. *Id.* at 686. The defendant also raised a unanimity of verdict challenge, and, as in the present case, the *Scuro* court found that the defendant had waived the issue for failure to object to the verdict and verdict forms. Nevertheless, the *Scuro* court addressed the issue on its merits in order to address the State's argument that two of the three convictions must be affirmed. The *Scuro* court concluded that because victim D.D. testified regarding three different incidents of viewing, one of which involved all three minor viewers and the other two of which involved only him, there was no way of knowing if the jury verdict was unanimous as to the count involving D.D. *Id.* at 688.

and we will accord those decisions deference." *Timberlake v. State,* 753 N.E.2d 591, 603 (Ind.2001), *cert. denied* (2002). "[E]ven the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client." *Id.* Thus, isolated mistakes, poor strategy, inexperience, and instances of poor judgment do not necessarily render representation ineffective. *Id.* Strategies are assessed based on facts known at the time and will not be second-guessed even if the strategy in hindsight did not serve the defendant's best interest. *Curtis v. State,* 905 N.E.2d 410, 414 (Ind.Ct.App.2009), *trans. denied.*

We note that Baker raises his ineffective assistance of counsel claim on direct appeal. While this is not prohibited, a post-conviction proceeding is usually the preferred forum for adjudicating ineffective assistance claims. *Rogers v. State,* 897 N.E.2d 955, 964 (Ind.Ct.App.2008), *trans. denied* (2009). The reason is that these claims often require the development of new facts not present in the trial record. *Id.* at 964–65. As such, claims based solely on the trial record almost always fail. *Id.* at 965. Because Baker raises the claim on direct appeal, we have no testimony from his trial counsel to explain his conduct. Thus, we look only to the trial record, and "every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only by hindsight." *Id.* (citation and quotation marks omitted).

Baker bases his ineffective assistance claim on four separate acts by his trial counsel. First, Baker contends that his counsel was ineffective in entering into the following stipulation:

1. Evidence regarding all allegations of sexual activity between the victims and the defendant is admissible, including but not limited to when those activities began.

2. Evidence regarding the opportunities for the victims to complain about that alleged sexual activity, including but not limited to the Loren Wilkins investigation, is admissible.

Appellant's Amended App. at 229. Baker specifically argues that this stipulation resulted in endless testimony by the victims regarding numerous incidents of molestation by Baker, even though Baker was charged with only one count as to each victim.

However, during closing argument, defense counsel repeatedly referenced Baker's numerous alleged acts of molestation in an attempt to demonstrate the inconsistencies in the victims' stories. Moreover, he repeatedly referenced Wilkins's case in an attempt to show that C.B. never said anything to the police about Baker molesting her when she was giving statements implicating Wilkins. Tr. at 1008. Thus, the record indicates that Baker's trial counsel used the stipulation as a strategy to challenge the victims' credibility. The fact that it proved unsuccessful in hindsight is of no avail to Baker on appeal. *Curtis,* 905 N.E.2d at 414.

Baker also contends that his trial counsel provided ineffective assistance when he failed to hire an expert witness to challenge certain testimony provided by the State's expert, board-certified pediatrician Dr. Lucinda DeMarco. In the context of an ineffective assistance claim, "a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess." *Id.* at 415 (citation and quotation marks omitted). Dr. DeMarco testified that when she examined C.B. on September 3, 2003, she found C.B.'s hymen to be intact and found no physical evidence of penetration. Tr. at 495. However, she testified that women can become pregnant with an intact hymen and that sexual intercourse with a child

734

may do the child no physical harm. *Id.* at 468, 471.

Baker argues that his trial counsel's failure to call an expert to balance this latter testimony constitutes deficient performance resulting in prejudice to his case. However, he has failed to provide any evidence to demonstrate what a defense expert would have said to counter Dr. DeMarco's statements. Without this, we have no basis upon which to judge his counsel's performance. *See Fugate v. State,* 608 N.E.2d 1370, 1373 (Ind.1993) (concluding that appellant's failure to provide affidavit showing substance of witness's testimony left court with no basis to judge counsel's performance and amounted to failure to establish ineffective assistance). Thus, we cannot find that, but for the lack of such an expert witness, the outcome of Baker's trial would have been different. *See Callahan v. State,* 527 N.E.2d 1133, 1139 (Ind.1988) (holding that mere speculation regarding whether expert witness testimony would have been advantageous to appellant's case is insufficient to establish ineffective assistance). As such, Baker has failed to establish either deficient performance or prejudice stemming from his counsel's decision not to hire an expert witness to balance the testimony.

Finally, we note that Baker's remaining allegations of ineffective assistance of counsel are based on arguments raised in issues II and III herein, for which we have found no error. Consequently, we find no basis for Baker's ineffective assistance claims. Accordingly, we affirm Baker's convictions.

Affirmed.

RILEY, J., and VAIDIK, J., concur.